1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 8/13/08**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

THOMAS E. SEIDEL,

Defendant.

Case Number C 07-4128 JF (RS)

ORDER[1] (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (2) DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

[re: docket nos. 18, 19]

    This is an action brought by the United States to reduce to judgment an outstanding federal tax assessment against Defendant Thomas Seidel ("Seidel"). Seidel has filed counterclaims seeking the return of funds seized from third parties' bank accounts in partial satisfaction of the outstanding assessment. The United States has filed a motion for summary judgment, and Seidel has filed a cross-motion for partial summary judgment. The Court has considered the briefing submitted by the parties, including the supplemental briefing requested by the Court[2], as well as the oral arguments of counsel presented at the hearing on June 13, 2008.

    [1] This disposition is not designated for publication in the official reports.

    [2] The Court granted each side leave to submit one supplemental brief, Seidel's brief to be filed on or before July 18, 2008 and the United States' brief to be filed on or before August 1,

1    For the reasons discussed below, both motions will be denied.

2    **I. BACKGROUND**

3    **A.    Employer's Obligation To Withhold And Turn Over Taxes**

4            "Every employer is required to deduct and withhold federal income tax and Federal

5    Insurance Contributions Act (FICA) tax from employees' wages as and when they are paid, and

6    to hold the amounts withheld in trust for the United States." *United States v. Bisbee*, 245 F.3d

7    1001, 1005 (8th Cir. 2001) (internal citations omitted).  "These taxes are commonly referred to as

8    trust fund taxes." *Id*.  If the employer fails to withhold and turn over these taxes, the United

9    States could lose revenue. *Id*.  In order to prevent such loss, the United States may seek to

10   impose personal liability upon the person responsible for the failure to withhold and turn over the

11   taxes. *Id*.  "The IRS is authorized to assess and collect a trust fund recovery penalty from any

12   officer or employee of any corporation who is responsible for collecting, accounting for, and

13   paying over any tax imposed by the Internal Revenue Code and who willfully fails to do so." *Id*.

14   (citing I.R.C. §§ 6671(b) and 6672).  A responsible person may be held personally liable for a

15   penalty equal to the total amount of the tax not accounted for and paid over. *Id*. (citing I.R.C. §

16   6672(a)).

17   **B.    T.E. Seidel Electric, Inc.**

18           Sometime before October 11, 1995, revenue officer Stephen Penrod ("Penrod") was

19   assigned the case of T.E. Seidel Electric, Inc. ("the company") with respect to its unpaid trust

20   fund taxes.  Penrod met with the company's president, Seidel, on October 11, 1995 and again on

21   June 12, 1996.  Penrod and Seidel had several telephone conversations as well.  Penrod claims in

22   his declaration that during these interactions Seidel admitted responsibility for the company's

23   unpaid trust fund taxes.  Penrod Decl. ¶¶ 3-4.  Seidel denies that he ever admitted responsibility

24   for the company's unpaid trust fund taxes.  Siedel Decl. ¶¶ 3-4.

25           Penrod states that on August 14, 1996 he sent Seidel a letter that read in its entirety as

26   follows:

27   ────────────

28   2008.  On August 9, 2008, Seidel filed a motion for leave to file an additional brief.  That motion
     is denied.

2

Case No. C 07-4128-JF (RS)
ORDER DENYING PARTIES' CROSS-MOTIONS  FOR SUMMARY JUDGMENT
(JFLC2)

1    THIS IS IN REGARDS TO T.E. SEIDEL ELECTRIC, INC.  I AM PURPOSING
     [sic] TO ASSESS TRUST FUND RECOVERY PENALTY AGAINST ALL
2    RESPONSIBLE PERSONS OF T.E. SEIDEL ELECTRIC, INC. PER IRC 6672.
     PLEASE COMPLETE THE ENCLOSED FORM 4180 AND RETURN IT BACK
3    TO ME BY SEPTEMBER 3, 1996.  ENCLOSED IS NOTICE 609 WHICH HAS
     TO BE INCLUDED WITH THE FORM 4180.
4
     Penrod Decl. ¶ 6 and Exh. 1 (Aug. 14 Letter to Seidel).  Seidel denies receiving the letter.  Seidel
5
     Decl. ¶ 6.
6
7         Penrod claims that on August 14, 1996, he also sent a letter to Brenda Harmon

8    ("Harmon"), a company employee responsible for receivables, payables, and payroll, that read in

     its entirety as follows:
9
          THIS IS IN REGARDS TO T.E. SEIDEL ELECTRIC, INC.  I AM PURPOSING
10        [sic] TO ASSESS TRUST FUND RECOVERY PENALTY AGAINST ALL
          RESPONSIBLE PERSONS OF T.E. SEIDEL ELECTRIC, INC. PER IRC 6672.
11        AS OFFICE MANAGER DURING THE DELINQUENT PERIODS YOU
          COULD BE HELD LIABLE AS ONE OF THE RESPONSIBLE PERSONS FOR
12        NOT PAYING THE TRUST FUND OVER TO THE GOVERNMENT.  PLEASE
          COMPLETE THE ENCLOSED FORM 4180 AND RETURN IT BACK TO ME
13        BY SEPTEMBER 3, 1996.  IF YOU DO NOT RESPOND AND COMPLETE
          THE FORM 4180 THE TAX WILL BE ASSESSED AGAINST YOU
14        WITHOUT DELAY.  PLEASE SECURE A SIGN [sic] LETTER FROM ANY
          PERSON WHO DIRECTED YOU TO PAY OTHER CREDITORS AHEAD OF
15        THE TRUST FUND TAXES.  ENCLOSED IS NOTICE 609 WHICH HAD TO
          BE ENCLOSED WITH THE FORM 4180.
16
17   Penrod Decl. ¶ 7 and Exh. 2. (Aug. 14, 1996 Letter to Harmon).

18        Penrod states that on September 6, 1996, he received in the mail a completed Form 4180

19   from Harmon, indicating that Seidel was a person responsible for the company's failure to pay

20   trust fund taxes.  Penrod Decl. ¶ 8 and Exh. 3.  Penrod further states that on September 9, 1996,

21   he received in the mail a completed Form 4180 from Seidel, indicating that Seidel was a person

22   responsible for failure to pay the company's trust fund taxes.  Penrod Decl. ¶ 9 and Exh 4.  Seidel

23   claims that he did not send Penrod a completed Form 4180 in September 1996, and that the Form

24   4180 Penrod claims was returned by mail actually was prepared in Penrod's office on October

25   22, 1996.  Seidel Decl. ¶ 7.

26        Penrod claims that he and Seidel spoke by telephone on October 2, 1996, at which time

27   Seidel stated that the company was his (Seidel's) corporation, that he called all the shots, and that

28   he understood that a trust fund recovery penalty would be assessed against him.  Penrod Decl. ¶

                                        3

1    10.  Seidel denies making any such statement.  Seidel Decl. ¶ 8.

2            Seidel went to Penrod's Salinas office on October 22, 1996 to deliver information

3    regarding the company's quarters ending June 30, 1996 and September 30, 1996.  Penrod Decl. ¶

4    11.  Penrod claims that on that occasion Seidel reviewed and signed the Form 4180 that Penrod

5    previously had received in the mail.  *Id.*  Seidel denies having mailed a Form 4180 to Penrod

6    previously, and asserts that he completed and signed the Form 4180 at Penrod's office during the

7    October 22 meeting.  Seidel Decl. ¶ 7.

8            Penrod claims that during the October 22 meeting, Seidel stated that he was going to file

9    a personal chapter 7 bankruptcy petition in a few days, that he had property in Bakersfield that

10   was in foreclosure, and that the trust fund recovery penalty should be assessed as soon as

11   possible so that the IRS would have a secured claim in bankruptcy and would have redemption

12   rights with respect to the Bakersfield property.  Penrod Decl. ¶ 12.  Penrod states that he gave

13   Seidel oral notice that he would do a prompt assessment the following day, October 23, 1996.  *Id.*

14   Penrod says he explained Seidel's appeal rights, and that Seidel stated that he would not appeal

15   the trust fund recovery penalty because he was fully liable.  *Id.*  Seidel claims that all of these

16   statements are "categorically false."  Seidel Decl. ¶ 10.

17          On October 23, 1996, Seidel was assessed $601,251.24 as a trust fund recovery penalty

18   with respect to the company's unpaid trust fund taxes.  Penrod Decl. ¶ 14.  On the same date,

19   Penrod filed a notice of federal tax lien with respect to the trust fund recovery penalty assessment

20   in both Monterey County and Kern County.  *Id.*

21          On October 30, 1996, Seidel went to Penrod's Salinas office and executed a Form 2751,

22   agreeing to the assessment and collection of the trust fund recovery penalty in the amount of

23   $601,251.24.  Penrod Decl. ¶ 15 and Exh. 6 (Form 2751).  At that time, Penrod hand delivered to

24   Seidel a Letter 1153 that had been generated on October 28, 2006.  *Id.* and Exh. 7 (Letter 1153).

25   Seidel did not appeal the trust fund recovery penalty assessment.

26          On August 9, 2000, Seidel submitted to the IRS an offer in compromise, offering to pay

27   $10,000 in full satisfaction of the trust fund recovery penalty assessment.  On April 2, 2003, the

28   IRS returned the offer in compromise to Seidel.

4

**C.      Parties' Cross-Actions**

The United States filed this action on August 10, 2007, seeking to reduce the trust fund recovery penalty assessment to judgment.  Seidel answered on September 7, 2007, asserting that the assessment is void and unenforceable on several grounds.  Seidel also filed counterclaims seeking recovery of funds seized from several third-party bank accounts in partial satisfaction of the trust fund recovery penalty.

**LEGAL STANDARD**

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

**III. DISCUSSION**

The United States seeks summary judgment, asserting that the trust fund recovery penalty assessment is valid, and that there are no defenses to the United States' right to reduce the assessment to judgment.  The United States also asserts that Seidel lacks standing to bring his counterclaims for recovery of funds.  Seidel seeks partial summary judgment that the trust fund recovery penalty assessment is illegal and void.  Specifically, Seidel asserts that:  (1) the United States' claim is barred by the statute of limitations; (2) no valid assessment was made by an assessment officer; (3) the IRS did not provide him with the requisite sixty-day written notice of

5

1   its intent to assess a trust fund recovery penalty in excess of $600,000 against him personally;

2   and (4) these defects were not, and could not be, cured by his execution of the Form 2751 after

3   the assessment allegedly had been made.

4   **A.    Statute Of Limitations**

5           Pursuant to 26 U.S.C. § 6502(a)(1), the IRS has ten years from the date of assessment to

6   institute levy or judicial proceedings to collect on the assessment.  Here, the assessment was

7   made on October 23, 1996 and this action was not filed until more than ten years later on August

8   10, 2007.  Seidel initially claimed that the action is time-barred.  The United States asserts that

9   the limitations period was tolled when Seidel filed an offer in compromise with the IRS in

10  August 2000, and did not resume running again until the IRS returned that offer in April 2003.

11  *See* 26 U.S.C. § 6331(k) (providing that offers in compromise toll the limitations period).  The

12  United States also asserts that Seidel's chapter 7 petition, filed on October 25, 1996 and

13  discharged on February 23, 1997, tolled the statute of limitations during its pendency and for an

14  additional 180 days.  *See* I.R.C. § 6503(h).  At the hearing, counsel for Seidel argued that the

15  limitations period was not tolled while the offer in compromise was pending, but conceded the

16  statute of limitations issue based upon tolling arising from Seidel's bankruptcy.  Because Seidel

17  no longer contends that the action is time-barred, the Court need not address the parties'

18  arguments on this point.

19  **B.    Requirement That Assessment Be Made By Assessment Officer**

20          Pursuant to 26 U.S.C. 6203, "[t]he assessment shall be made by recording the liability of

21  the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by

22  the Secretary."  Treasury Regulation 301-6203-1 provides as follows:

23          The district director and the director of the regional service center shall appoint
            one or more assessment officers. The district director shall also appoint
24          assessment officers in a Service Center servicing his district. **The assessment
            shall be made by an assessment officer signing the summary record of
25          assessment.** The summary record, through supporting records, shall provide
            identification of the taxpayer, the character of the liability assessed, the taxable
26          period, if applicable, and the amount of the assessment. The amount of the
            assessment shall, in the case of tax shown on a return by the taxpayer, be the
27          amount so shown, and in all other cases the amount of the assessment shall be the
            amount shown on the supporting list or record. **The date of the assessment is the
28          date the summary record is signed by an assessment officer.**  If the taxpayer

                                              6

1
2
3

requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed.

4  Treas. Reg. 301.6203-1 (emphasis added).  Seidel submits a copy of Internal Revenue

5  Memorandum ("IRM") 3.17.63.18, which provides in relevant part that the position of

6  assessment officer should not be given to a position lower than Branch Chief.

7          "Certificates of assessments and payments are generally regarded as being sufficient

8  proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and

9  assessments that have been made." *Gentry v. United States*, 962 F.2d 555, 557 (6th Cir. 1992).

10  A certificate of assessment and payment raises a presumption of validity of the assessment, and

11  shifts the burden to the taxpayer to demonstrate that the assessment was not valid. *Id.*

12          The United States has submitted a certificate of assessment and payment indicating that a

13  trust fund recovery penalty of $601,251.24 was assessed against Seidel on October 23, 1996.

14  This certificate shifts the burden to Seidel to present evidence that the assessment was invalid.

15  Seidel points to Penrod's declaration statement that *he* (Penrod) performed the assessment on

16  October 23, 1996.  Penrod Decl. ¶ 14.  As Seidel points out, Penrod is a revenue officer, not an

17  assessment officer.  Accordingly, an assessment performed by Penrod would not be valid.

18          When confronted with this argument in Seidel's opposition to its motion for summary

19  judgment, the United States in its reply brief represented that Penrod simply *requested* the

20  assessment, and that the assessment actually was made by an assessment officer.  Seidel moved

21  to strike this argument from the reply brief, pointing out that prior to filing the reply brief the

22  United States repeatedly represented that Penrod made the assessment.  Because of this conflict

23  in the record as to who actually performed the assessment, the Court requested supplemental

24  briefing from the parties on this point.  That briefing was timely  filed on July 18, 2008 and

25  August 1, 2008.

26          The United States has clarified that the October 23, 1996 assessment was made by

27  Assessment Officer Mildred Byrd ("Byrd"), who signed the summary record of assessments on

28  that date.  The United States' prior representations that Penrod made the assessment appear to

7

1   have been the result of imprecise drafting of Penrod's declaration; actually, Penrod requested the

2   assessment, which then was made by Byrd.  The evidence submitted by the United States on this

3   point disposes of Seidel's argument that the assessment was made by a person without authority.

4   **C.      Sixty-Day Preliminary Written Notice**

5           Pursuant to 26 U.S.C. § 6672, any person who willfully fails to collect and pay over trust

6   fund taxes when required by law to do so is subject to a penalty equal to the total amount of the

7   taxes not collected.  26 U.S.C. § 6672(a).  At the time of the October 23, 1996 assessment at

8   issue here, § 6672 contained the following notice requirement:

9           **(b) Preliminary notice requirement.--**

10          **(1) In general.**--No penalty shall be imposed under subsection (a) unless the
            Secretary notifies the taxpayer in writing by mail to an address as determined
11          under section 6212(b) that the taxpayer shall be subject to an assessment of such penalty.

12          **(2) Timing of notice.**--The mailing of the notice described in paragraph (1) shall
            precede any notice and demand of any penalty under subsection (a) by at least 60
13          days.

14  26 U.S.C. § 6672(b) (effective July 31, 1996 to July 21, 1998).[3]

15          The United States asserts that the August 14, 1996 letter from Penrod to Seidel met the

16  sixty-day preliminary notice requirement.  The United States submits Penrod's declaration and a

17  copy of the letter as proof that the letter was sent.  *See* Penrod Decl. ¶ 6 and Exh. 1.  Seidel

18  asserts that he did not receive the letter, submitting his own declaration in support.  Seidel Decl.

19  ¶ 6.  Seidel suggests that Penrod created the letter after the fact, noting that the letter was written

20  on ordinary bond paper rather than IRS stationary, and that there is no evidence that it actually

21  was sent other than Pernod's word.  Given this conflicting evidence, the Court concludes that a

22  triable issue of material fact exists as to whether the August 14 letter was sent or received.

23          Seidel asserts that even if the August 14 letter was sent, the letter does not constitute

24  sufficient notice of the United States' intent to assess a trust fund recovery penalty in excess of

25  $600,000 against him personally.  Whether a particular writing constitutes adequate notice under

26  § 6672(b) is a question of law.   *Bisbee*, 245 F.3d at 1006.

27  _____

28          [3] Effective July 22, 1998, the statute was amended to permit the sixty-day notice to be
    delivered in person as well as by mail.

1    There appear to be very few cases addressing the requisite contents of a notice under §

2    6672(b).  In *Bisbee*, it was undisputed that the IRS sent the taxpayer three timely notices of the

3    pending assessment of the trust fund penalty.  The taxpayer's argument was that because the

4    three notices not only informed the taxpayer of the assessment but also demanded payment, they

5    did not constitute the type of pre-demand notice contemplated by § 6672(b).  The district court

6    rejected this argument, concluding "that the notices contained information explaining how to pay

7    the penalty if the taxpayer did not wish to challenge it, that this informational notice did not

8    demand payment, and that Bisbee therefore received sufficient timely notice."  *Bisbee*, 245 F.3d

9    at 1006.

10    In *Cappetta v. United States*, the taxpayer did not dispute that he received an undated

11    letter stating that the IRS planned to assess a penalty against him in the amount of $619,241.03.

12    *Id*., 2006 WL 51163, at *5 (N.D. Ill. January 9, 2006).  A certified letter receipt established the

13    date upon which the letter had been delivered.  *Id*.  The district court concluded that the letter met

14    the notice requirements of § 6672(b).

15    In *Bisbee*, the sufficiency of the information provided in the notices was not disputed; the

16    question was whether the demands for payment contained in the notices removed them from the

17    scope of § 6672(b).  *Carpetta* is slightly closer to the facts of the instant case, in that the notice

18    letter was not particularly detailed.  However, the notice letter in *Carpetta* did specify that the

19    IRS planned to assess a penalty against the taxpayer in a specified amount.  Here, Penrod's

20    August 14 letter stated only that the IRS intended to assess a trust fund recovery penalty against

21    all responsible persons of the company, and sought information as to who those responsible

22    persons might be.  The letter did not state that the IRS had decided to assess a penalty against

23    Seidel personally, and did not state the amount of the proposed penalty.  Under these

24    circumstances, the Court concludes as a matter of law that the August 14 letter did not constitute

25    adequate notice under § 6672(b).[4]  Accordingly, the assessment was invalid unless Seidel waived

26

27    _____

28    [4] Given its disposition of this issue, the Court need not reach Seidel's argument that
      notice under § 6672(b) must be in the form of a "Letter 1153(DO)."  The Court notes that neither
      of the two cases addressing the requirements of § 6672(b) hold that the notice must be in any

9

1    the failure to provide an adequate sixty-day preliminary notice.

2    **D.    Waiver**

3          The United States contends that on October 30, 1996, Seidel executed a Form 2751 and

4    that such execution waived any procedural defects with respect to the sixty-day preliminary

5    notice.  The Form 2751, entitled "Proposed Assessment of Trust Fund Recovery Penalty," lists

6    unpaid tax liabilities of T.E. Seidel Electric, Inc. for a number of tax periods in 1993, 1994, 1995

7    and 1996.  The total amount of the unpaid tax liabilities for these periods is noted as

8    $601,251.24.  This amount is referred to as the "Total Penalty."  The form contains the following

9    language directly above Seidel's signature and the date:

10          I consent to the assessment and collection of the total penalty shown, which is
            equal either to the amount of Federal employment taxes withheld from employees
11          [sic] wages or to the amount of Federal excise taxes collected from patrons or
            members, and which was not paid over to the Government by the business named
12          above; and I waive the privilege of filing a claim for abatement after assessment.

13   Penrod Decl., Exh. 6 (Form 2751).

14          The United States has not cited, and the Court has not discovered, any decisions holding

15   that execution of a Form 2751 constitutes a waiver of the sixty-day preliminary notice

16   requirement set forth in § 6672(b).  The current version of the Internal Revenue Manual

17   explicitly provides that a Form 2751 does waive the subject notice requirement.  *See* IRM

18   5.7.4.7(2) (4-13-2006) (providing that a Form 2751 "[w]aives the 60 day restriction on notice and

19   demand if signed by the taxpayer"); IRM 5.7.4.7(3) (providing that the sixty-day preliminary

20   notice requirement does not apply "[i]f the responsible person signs Form 2751, Proposed

21   Assessment of Trust Fund Recovery Penalty, waiving the restriction on notice and demand set

22   forth in IRC 6672(b)").  However, the waiver provisions of the Internal Revenue Manual were

23   not in effect at the time Seidel executed the Form 2751 at issue in this case.  Moreover, "[t]he

24   Internal Revenue Manual does not have the force of law" and is not binding on this Court.  *Fargo*

25   *v. C.I.R.*, 447 F.3d 706, 713 (9th Cir. 2006).

26

27   particular form.  The focus of the inquiry in both *Bisbee* and *Carpetta* was whether the

28   documents in question provided the taxpayer with sufficient information regarding the IRS's
     intent to assess the penalty against the taxpayer.

                                              10

1   The Court thus turns to traditional waiver principles. "Waiver is the 'intentional or

2   voluntary relinquishment of a known right.'" *United States v. Fort*, 472 F.3d 1106, 1120 (9th

3   Cir. 2007) (quoting Black's Law Dictionary 1580 (6th ed. 1990). "The Ninth Circuit has held

4   that '[w]aiver occurs when there is an existing right, a knowledge of its existence, and an actual

5   intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to

6   induce a reasonable belief that it has been relinquished.'" *In re County of Orange*, 219 B.R. 543,

7   563 (Bkrtcy C.D. Cal. 1997) (quoting *United States v. Reliance Ins. Co.,* 799 F.2d 1382, 1386

8   (9th Cir. 1986)). "The determination of whether there is a waiver is usually a question of fact as

9   the question of intent necessarily depends on the factual circumstances of each case." *Id*.

10  (internal quotation marks and citation omitted).

11      The United States asserts that by signing the Form 2751, Seidel voluntarily agreed to

12  assessment of a trust fund recovery penalty against him in the stated amount of $601,251.24 and

13  relinquished any right to challenge the assessment based upon procedural defects. The United

14  States argues that waiver is obvious from the wording of the Form 2751. In addition, the United

15  States offers Penrod's declaration statements that Seidel repeatedly admitted responsibility for

16  the company's failure to pay the subject trust fund taxes and acknowledged his understanding

17  that the trust fund recovery penalty would be assessed against him personally. Penrod Decl. ¶¶ 3,

18  10-12. Penrod further declares that during an interview on October 22, 1996, Seidel stated that

19  he intended to file a personal chapter 7 petition and urged the IRS to file a federal tax lien as

20  soon as possible so as to obtain a secured claim in bankruptcy.

21      Seidel denies that he intended the Form 2751 to constitute a waiver of any of the statutory

22  prerequisites for a legal assessment. He takes the position that his signature on the "Proposed

23  Assessment of Trust Fund Recovery Penalty" constituted agreement to a *proposed future*

24  *assessment* in the stated amount. He contends that prior to October 30, he never had been given

25  notice that the IRS was seeking to hold him personally responsible for the company's unpaid

26  trust fund taxes; never had been informed of the amount of the proposed penalty; and never

27  acknowledged responsibility for that penalty. Seidel Decl. ¶¶ 3, 5-8. He contends that at the

28  time he signed the Form 2751 on October 30, he had not been informed and did not know that an

11

1   assessment had been made seven days earlier on October 23, 2008. *Id*. at ¶ 11. He argues that he

2   did not intend to waive the procedural defects of such assessment, and in fact could not have so

3   intended because he did not know about the assessment at the time he executed the Form 2751.

4       Given the conflicting evidence as to Seidel's state of mind at the time he executed the

5   Form 2751, the Court concludes that a triable issue of material fact exists as to whether Seidel

6   waived the failure to provide adequate sixty-day preliminary notice of intended assessment as

7   required by § 6672(b).

8   **E.    Seidel's Counterclaims**

9       The United States asserts that Seidel's counterclaims in essence are wrongful levy

10  actions. The statute governing such actions provides in relevant part as follows: "If a levy has

11  been made on property or property has been sold pursuant to a levy, any person (other than the

12  person against whom is assessed the tax out of which such levy arose) who claims an interest in

13  or lien on such property and that such property was wrongfully levied upon may bring a civil

14  action against the United States in a district court of the United States." 26 U.S.C. § 7426(a)(1).

15  The United States asserts that because Seidel *is* the person against whom the tax is assessed, he

16  lacks standing to bring the wrongful levy actions asserted in his counterclaims.

17      In opposition, Seidel argues that he is *not* bringing wrongful levy actions pursuant to §

18  7426(a)(1), but rather is asserting refund claims. The counterclaims allege that the IRS seized

19  the subject monies from the bank accounts of third parties based upon the theory that those third

20  parties were Seidel's alter egos. In other words, the IRS actually was seizing Seidel's funds.

21  Seidel appears to be arguing that because the assessment was invalid, seizure of the funds in

22  satisfaction of the assessment likewise was invalid. Given the theory under which the funds were

23  seized -- that they actually were Seidel's funds -- Seidel argues that his claims properly are

24  brought as claims for refund.

25      In reply, the United States argues that Seidel has failed to allege the prerequisites to a

26  refund action, and thus has failed to state a claim upon which relief may be granted. The United

27  States requests that the Court dismiss the counterclaims without prejudice.

28      A reply brief with respect to a motion for summary judgment is not the appropriate

12

1   vehicle for raising such an argument.  Accordingly, the United States' motion for summary

2   judgment will be denied with respect to the counterclaims.  This ruling is without prejudice to the

3   United States' making an appropriate motion based upon its contention that Seidel has not

4   alleged viable claims for refund.

5   **F.       Validity Of Federal Tax Liens**

6           Seidel contends that the notices of federal tax lien filed by Penrod against Seidel in both

7   Monterey County and Kern County are invalid, and devotes substantial briefing to this point.

8   The validity of the liens is irrelevant to the claims at issue in this action.  The United States

9   asserts a single claim seeking to reduce the assessment against Seidel to judgment; resolution of

10  that action depends upon the validity of the assessment, not the validity of the liens.  Seidel's

11  counterclaims seek refund of monies seized from third parties' bank accounts.  The federal tax

12  liens at issue appear to be irrelevant to those claims.

13                                      **IV. ORDER**

14          (1)      Plaintiff's motion for summary judgment is DENIED; and

15          (2)      Defendant's motion for partial summary judgment is DENIED.

16

17

18

19

20

21

22  DATED:  8/13/08

23                                      _____

24                                      JEREMY FOGEL
                                        United States District Judge

25

26

27

28

                                        13

1    This Order has been served upon the following persons:

2

3    David L. Denier david.denier@usdoj.gov

4    Robert Alan Jones rajltd@aol.com, jean@rajlv.com

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 07-4128-JF (RS)
ORDER DENYING PARTIES' CROSS-MOTIONS  FOR SUMMARY JUDGMENT
(JFLC2)